EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii
R. MICHAEL BURKE  1902
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
Telephone: 541-2850
Facsimile: 541-3752
E-mail: Mike.Burke@usdoj.gov

JEREMY N. HENDON
Tax Division
U.S. Department of Justice
PO Box 683
Ben Franklin Station
Washington DC 20044-0683
Telephone: (202) 353-2466
Facsimile: (202) 307-0054
E-mail: jeremy.hendon@usdoj.gov
        Western.TaxCivil@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STARN O'TOOLE MARCUS & FISHER, and PETER STARN,<br><br>    Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Civil No.: 06-00572 JMS LEK<br><br>UNITED STATES' RESPONSE TO PETITION TO QUASH INTERNAL REVENUE SERVICE SUMMONSES; DECLARATION OF IRS REVENUE AGENT GUDRUN STACKS, EXHIBITS 1-6; CERTIFICATE OF SERVICE<br><br>Date: April 9, 2007<br>Time: 10:30 a.m.<br>Judge: Leslie Kobayashi |

**UNITED STATES' RESPONSE TO PETITION
TO QUASH INTERNAL REVENUE SERVICE SUMMONSES**

The United States of America, by and through its undersigned

counsel, hereby responds to petitioners' Petition to Quash
Internal Revenue Service Summonses ("Petition") and submits the
following:

### STATEMENT OF THE CASE

On October 23, 2006, Starn O'Toole Marcus & Fisher ("Starn
O'Toole") and Peter Starn ("Mr. Starn") (collectively
"Petitioners") filed with the Court the Petition, in which they
ask the Court to quash summonses issued by the Internal Revenue
Service ("IRS".  See Memorandum in Support of Petition ("Memo in
Support"), pp. 2-3.  Petitioners set forth eight reasons why they
claim the Petition should be granted: (1) the IRS did not first
provide PGP with notice that it was making third party contacts
about PGP's tax liability; (2) the IRS has not made a prima facie
showing under United States v. Powell, 379 U.S. 48 (1964), that
it issued the summonses in good faith; (3) the summonses seek
information protected by the attorney-client privilege; (4) the
summonses seek information protected by work product immunity;
(5) the summonses seek information which is protected by
Petitioners' ethical duty of confidentiality and under the terms
of a nondisclosure obligation to which Petitioners are bound; (6)
the scope of the summonses is unduly broad and may cover
litigation matters wholly unrelated to PGP's tax obligations; (7)
the summonses fail to provide adequate time for compliance
subjecting Petitioners to an undue burden and expense; and (8)

- 2 -

the summonses request an overly detailed privilege log to which the IRS is not entitled.  See id.  With respect to all of these arguments, none are persuasive and they should be rejected.

In addition, the parties have been working towards a resolution of the Petitioners' response to the IRS summonses at issue.  Petitioners have produced three boxes of documents and a privilege log with respect to the remaining responsive documents that they have not produced claiming that production of those documents is precluded by the attorney-client privilege.  Thus, the issue has been narrowed to a determination as to the sufficiency of the privilege log as to some of the remaining responsive documents that have not been produced and to the assertion of the attorney-client privilege to excuse Petitioners' failure to produce all of the remaining responsive documents to the IRS.

## BACKGROUND

The IRS is conducting an examination into the federal tax liabilities of Pan Global Partners ("PGP")for the tax period ending December 31, 2002.  See Declaration of IRS Revenue Agent Gudrun Stacks ("Stacks Dec.") ¶ 2.  Revenue Agent Stacks is the IRS Revenue Agent assigned to that examination.  Id.

During the course of her examination, Revenue Agent Stacks learned that Petitioners worked on the sale of PGP's partnership interest in Global Resort Partners to Hilton Recreation, Inc. and

- 3 -

therefore may have information and/or records pertaining to PGP that may be relevant to the IRS in its examination.  See id., ¶¶ 9-10, 12-16.  In her capacity as a Revenue Agent and in furtherance of her examination, on October 3, 2006, Revenue Agent Stacks issued IRS administrative summonses to Petitioners and, on that same day, served the summonses upon Petitioners by mailing by certified mail attested copies of the summonses to them.  See id., ¶¶ 3-4 and Exhibits 1-4 attached thereto.  In accordance with 26 U.S.C. § 7402(c)(1), prior to issuances of the summonses at issue, Revenue Agent Stacks mailed notice of contact of third parties to PGP's last known address on September 21, 2005.  See id., ¶ 5.

The summonses required Mr. Starn and a representative of Starn O'Toole to appear before a representative of the IRS on November 1, 2006, to provide testimony and produce books, papers, records, or other data as requested in the summonses.  See id., ¶ 6.  Upon receipt of the summonses, an attorney from Starn O'Toole contacted Revenue Agent Stacks and requested additional time to respond.  See id.  Revenue Agent Stacks offered to extend the response deadline by two weeks but was told by the Starn O'Toole attorney that such a two-week extension did not provide Starn O'Toole or Mr. Starn with sufficient time within which to respond to the summonses.  See id.

Instead of appearing before Revenue Agent Stacks,

- 4 -

Petitioners filed the Petition on October 23, 2006.  <u>See</u>
Petition.  Neither Mr. Starn nor any representative of Starn
O'Toole appeared before Revenue Agent Stacks in response to the
summonses on November 1, 2006 or within the two-week extension
period.  <u>See</u> <u>id.</u>, ¶ 7.

After the filing of the Petition, Starn O'Toole produced
three boxes of records responsive to the summonses on November
26, 2006, and, by letter dated February 7, 2007, mailed to the
IRS a privilege log ("privilege log") describing various
documents that are responsive to the summonses but are being
withheld by Petitioners pursuant to the attorney-client
privilege.  <u>See</u> <u>id.</u>, ¶ 8.  Also, pursuant to the IRS's request,
Starn O'Toole produced a "Name Key to Starn O'Toole Marcus
Fisher/Peter Starn Privilege Log" ("name key") to assist in the
IRS's determination whether the individuals and companies listed
in the privilege log were clients of Petitioners.  <u>See</u> <u>id.</u>
Redacted copies of the privilege log and name key are attached to
the Stacks Dec. as Exhibits 5 and 6.  Unredacted copies of the
privilege log and name key will be produced to the Court at the
hearing on this matter.  The documents listed in the privilege
log, which are not already in the possession of the IRS, are the
only remaining documents at issue in this case.  <u>See</u> <u>id.</u>, ¶ 15.

**ARGUMENT**

In this proceeding, Petitioners seek to quash the summonses issued to them and the United States responds that the summonses are valid and that Petitioners should comply with them.

The standard and burden of proof in an action to quash a summons is identical to the standard and burden of proof in an action to enforce a summons. <u>See</u>, S. Rep. No. 97-494, 97th Cong., 2d Sess. 283 (1982) ("although an action to quash the summons must be instituted by the taxpayer, the ultimate burden of persuasion with respect to its right to enforcement of the summons will remain on the Secretary, as under current law. Thus, the Secretary will have to meet all the requirements of <u>United States v. Powell</u>, 379 U.S. 48 (1964) . . ."). When a party challenges a summons issued by the IRS or when the government asks that an IRS summons be enforced, the government must first establish a <u>prima facie</u> case of good faith as established by the United States Supreme Court in <u>Powell</u>, 379 U.S. at 57-58. Once the government has established a <u>prima facie</u> case, the burden of proof shifts to the taxpayer. As explained by the Ninth Circuit, the taxpayer bears a "heavy burden" of showing an "abuse of process" or "the lack of institutional good faith." <u>Fortney v. United States</u>, 59 F.3d 117, 120 (9th Cir. 1995) (<u>citing</u> <u>United States v. Dynavac</u>, 6 F.3d 1407, 1414 (9th Cir. 1993)). To meet this burden, the "taxpayer must allege

specific facts and evidence to support his allegations." Liberty
Financial Services v. United States, 778 F.2d 1390, 1392 (9th
Cir. 1985).

In this case, contrary to Petitioners' assertions, the
United States has established a prima facie case of good faith.
The Revenue Agent who issued the summonses attests that the
summonses meets all requirements of the law.

### A.   The Summonses Meet the Requirements under Powell

In order to show that a summons is valid and proper, Powell
requires that the IRS establish that the summons: (1) was issued
for a legitimate purpose; (2) seeks information relevant to that
purpose; (3) seeks information that is not already within the
IRS' possession; and (4) satisfies all administrative steps
required by the United States Code.   Powell, 379 U.S. at 57-58.
Courts have held that the government's burden of satisfying the
*Powell* requirements "is 'a slight one' and typically is satisfied
by the introduction of the sworn declaration of the revenue agent
who issued the summons that the Powell requirements were met."
Fortney, 59 F.3d at 120 (citing Dynavac, 6 F.3d at 1414; United
States v. Gilleran, 992 F.2d 232, 233 (9th Cir. 1993)).

In the instant case, the declaration of Revenue Agent Gudrun
Stacks, the agent who issued the summonses, establishes that each
of those summonses meets the Powell requirements.

### 1.  __Legitimate Purpose__

The first element of the __Powell__ test requires that the IRS issued the summonses to serve some legitimate purpose.  Here, the IRS is conducting an examination into the federal tax liabilities of PGP for the tax period ending December 31, 2002.  __See__ Stacks Dec., ¶ 2.  Revenue Agent Stacks has requested information and documents Petitioners have in their possession, custody, or control regarding various transactions in which Petitioners provided services to PGP.  These purposes are authorized by Sections 7602(a) and 7602(b) of the Internal Revenue Code, 26 U.S.C.

### 2.  __Relevance__

The second element of the __Powell__ test requires that the IRS summonses seek information that is relevant to the purpose of the investigation.  The Supreme Court has said that the relevancy requirement is met when the information "might have thrown light upon the correctness of the return."  __United States v. Arthur Young & Co.__, 465 U.S. 805, 814 (1984).  The Ninth Circuit has further explained this test as a "realistic expectation rather than an idle hope that something may be discovered."  __Tedder v. United States__, 77 F.3d 1166, 1168-1169 (9th Cir. 1996).

In this case, the information sought by the summonses meets the relevancy test.  To help determine PGP's federal tax liability, Revenue Agent Stacks asked for documents concerning

- 8 -

various business transactions in which Petitioners provided services to PGP.  See Stacks Dec., attachments to Exhibits 1 and 2 describing the documents requested.  The IRS can use this information and these documents to determine PGP's correct federal tax liability for the tax period ending December 31, 2002.  Thus, the IRS has a realistic expectation that the documents and information summoned might throw light upon PGP's correct federal tax liabilities for the tax period ending December 31, 2002.

### 3.  Not already in the possession of the IRS

The third element of the Powell test requires that the IRS not summon documents that it already has in its possession.  As discussed above, the only remaining documents at issue are the documents included in Petitioners' privilege log.  Revenue Agent Stacks declares that the IRS does not have in its possession the documents included in Petitioners' privilege log.  See id., ¶ 15. Thus, this element of the Powell test has been met.

### 4.  Administrative steps satisfied

Finally, the fourth element of the Powell test requires that the summons meets the administrative steps required by the Internal Revenue Code, 26 U.S.C.  The summonses at issue in this case meet this requirement.  Revenue Agent Stacks declares that all administrative steps have been followed in the issuance of the summonses at issue.  See id., ¶ 18.  Thus, this final element

of the <u>Powell</u> test has been met, and the United States has established a <u>prima facie</u> case of good faith as required by <u>Powell</u>.

**B.**  **<u>Petitioners Fail to Carry Their Heavy Burden of Showing Abuse of Process or Lack of Institutional Good Faith</u>.**

Once a <u>prima facie</u> case for enforcement is made through submission of the Revenue Agent's declaration, a "heavy" burden is placed on the taxpayer to defeat enforcement by showing an "abuse of process" or "the lack of institutional good faith." <u>Fortney</u>, 59 F.3d at 120.  In the instant case, Petitioners' reasons as to why the summons at issue should be quashed are not valid.

**1.**  **<u>The IRS Gave the Proper Third-Party Contact Notice</u>**

Petitioners first argue that the IRS did not first provide reasonable notice to PGP before initiating third-party contact with them through the summonses.  This argument is meritless.  On September 21, 2005, Revenue Agent Stacks mailed notice of contact of third parties to PGP's last known address.  <u>See</u> Stacks Dec., ¶ 5.  Therefore, this argument should be rejected.

**2.**  **<u>The United States has made a prima facie showing of good faith as required by Powell</u>**

As discussed thoroughly above, the United States has made a showing of good faith as required by <u>Powell</u>.  To the extent Petitioners argue that the IRS was required to make such a showing of good faith prior to issuance of the summonses, such

argument is nonsensical as there is no requirement that the IRS first obtain court approval before issuing a summons.  Therefore, this argument should be rejected.[1]

### 3.   No Work Product Issue Remains

Petitioners next argue that the summonses request information protected by the attorney work product doctrine.  As discussed above, the only remaining documents at issue are included in Petitioners' privilege log.  Petitioners did not indicate that they are withholding any of the documents on their privilege log based on the attorney work product doctrine.  Therefore, this issue is moot.

### 4.   Petitioners' Ethical Duty of Confidentiality and Nondisclosure Obligations do not Bar Enforcement of the Summonses

Petitioners next argue that the summonses seek documents and information protected by Petitioners' ethical duty of confidentiality and under the terms of a nondisclosure obligation to which Petitioners are bound.  First, Petitioners did not include either of these arguments as a basis for not producing the documents identified on their privilege log.

---

[1]Although in listing their arguments as to why the summonses should be quashed in the beginning of the Memo in Support Petitioners include a separate argument that the summonses should be quashed because they are overbroad, in the substance of the Memo in Support Petitioners do not separately argue that point. Therefore, it is assumed that their overbroad argument is included in their argument that the United States has not met the Powell standard and the United States has addressed it in its discussion showing that the Powell standard has been met.

Second, even if Petitioners are withholding certain
documents based on these arguments, such bases do not excuse
Petitioners from responding to properly-issued summonses.  See
United States v. Blackmun, 72 F.3d 1418, 1424 (9th Cir. 1995).
Such an argument runs afoul of Congress' grant of authority to
the IRS to obtain the information requested by the summonses and
Petitioners provide no authority for their argument.  See 26
U.S.C. § 7602(a)(2).  Further, if such an argument is taken to
its logical conclusion, any third party recordkeeper would not be
required to produce documents in response to an IRS summons by
simply signing a confidentiality agreement or, if the third party
recordkeeper is an attorney or law firm, then a state ethical
rule would trump a federal statue.  Such a result is non-sensible
and would give taxpayers free license to avoid tax examinations
and should be swiftly rejected.

Finally, Petitioners' request for a protective order that
prohibits the IRS from publicly disclosing the information it
obtains from enforcement of the summonses also should be
rejected.  Petitioners provide no authority for such an intrusive
request burdening the IRS's right to summon documents and
information under the Internal Revenue Code.  Notwithstanding
Petitioners' request, the IRS is already bound by the
confidentiality provisions of 26 U.S.C. § 6103 which prohibits
the IRS from disclosing tax return information with few

exceptions.   Therefore, Petitioners' request for a protective order similar to a confidentiality agreement should be rejected.

**5.   <u>Petitioners Have Had Sufficient Time to Respond to the Summonses and do not Cause an Undue Burden</u>**

As discussed above, at the time Petitioners filed the Petition, they were concerned that they could not comply with the summonses by the deadline in the summonses or by the extension that Revenue Agent Stacks offered them.   Since filing the Petition, however, Petitioners have stated that they have produced all responsive documents and a privilege log for all of the documents that they are withholding based on the attorney-client privilege.   Thus, the issue of the sufficiency of a response time is moot.

Petitioners also argue that the IRS should be required to pay Respondents their reasonable attorneys' fees and costs in responding to the summonses.   This argument is meritless.   The Internal Revenue Code provides that the Secretary shall by regulation establish the reimbursement rates and conditions for third parties who are required to respond to an IRS summons.   <u>See</u> 26 U.S.C. § 7610(a).   The IRS has provided a reimbursement schedule for responding to IRS summonses in Treas. Reg. § 301.7610-1.   Some courts have found that the IRS can be required to bear some of the costs associated with a third party complying with an IRS summons but only in limited certain circumstances not applicable here.   <u>See</u> <u>United States v. Abrahams</u>, 905 F.2d 1276,

- 13 -

1286 (9th Cir. 1990), <u>overruled on other grounds by</u> <u>United States</u>
<u>v. Jose</u>, 131 F.3d 1325 (9th Cir. 1997) (<u>citing</u> <u>United States v.</u>
<u>Southwestern Bank & Trust Co.</u>, 693 F.2d 994 (10th Cir. 1982)).
Petitioners have provided no authority to support their argument
that the IRS is required to reimburse them for their attorneys'
fees and costs, at their market rate, in responding to the
summonses.  Such a requirement would have a chilling effect on
the IRS's ability to summon law firms as third party
recordkeepers because the costs would be too high.  Thus, this
request should be rejected.

Finally, Mr. Starn argues that the summons issued to him
individually is oppressive, embarrassing, and harassing given
that it is duplicative of the summons issued to Starn O'Toole.
Here, the United States does not seek production of the same
documents twice.  Instead, the summonses were issued to avoid a
whipsaw argument that has recently been made by law firms in
similar situations.  Mr. Starn was one of the primary attorneys
at Starn O'Toole who provided services to PGP.  The IRS issued
the duplicative summonses because in recent cases in which it has
issued a third-party recordkeeper summons to a law firm, some law
firms have taken the position that such a summons does not cover
records produced by an individual attorney working for the law
firm.  In those cases, the law firms have argued that such
documents are the personal documents of the individual attorney

and refused to produce them as nonresponsive to the summons.
Therefore, the summons issued to Mr. Starn is not oppressive,
embarrassing, or harassing because it simply ensures that
Petitioners produce all documents that they both possess with
respect to PGP and that are responsive to the summonses.

**C.** **Petitioners Have Not Met Their Burden to Establish that the Attorney-Client Privilege Applies to the Withheld Documents**

Petitioners last two arguments in support of its Petition
are that the summonses request an overly detailed privilege log
which is not required and that the summonses seek information
protected from disclosure by the attorney-client privilege.

**1.** **The Privilege Log is Insufficient With Respect to a Large Number of the Documents**

In this case, Petitioners have submitted a 28-page privilege
log covering approximately 2,700 pages of documents arguing that
the documents are protected from disclosure by the attorney-
client privilege.  In addition, at the request of the IRS,
Petitioners submitted the name key attempting to identify certain
individuals and entities listed on the privilege log.

The privilege log is deficient with respect to a large
number of documents, however.  First, various entries on the
privilege log under the heading "description" indicate that the
withheld document pertains to internal legal analysis performed
in order to provide legal advice to the client.  The vast
majority of other entries under the heading "description,"

- 15 -

however, simply state that the document is a fax transmittal, letter, note, memorandum, e-mail, invoice, timeline, or other reference that does not also state that such documents pertain to legal advice or legal analysis.  Because Petitioners clearly made a distinction between documents which pertain to legal analysis and/or legal advice and documents that are just emails, faxes, memoranda, e-mails, invoices, notes, or letters, they necessarily knew that the latter documents do not pertain to legal advice or legal analysis.  As such, those documents should be produced.

In the alternative, Petitioners should be required to further identify those documents that are not identified as pertaining to legal advice or legal analysis and state why they believe such documents fall within the attorney-client privilege protection, keeping in mind that documents pertaining to business advice or information contained in documents which the attorney learned from another source, and is relaying to the client, are not privileged.[2]

In addition, the privilege log is further deficient in that Petitioners have withheld certain documents, described as containing both legal analysis/legal advice and described as simply a fax, letter, note, or other document (those are the documents discussed in the preceding paragraph), that are addressed to various individuals or entities whom Petitioners

---

[2]These issues are thoroughly discussed below.

have identified in the name key as "agents of PGP."  Petitioners

have not, however, provided any explanation as to how these

individuals and entities are legally considered an agent such

that the attorney-client privilege between it and PGP would apply

to the documents.  For example, Petitioners are withholding a

letter with annotations addressed to China Trust National Bank

regarding internal legal analysis containing and using

confidential information performed in order to provide legal

advice to the client.  See Stacks Dec., ¶ 13(a).  Petitioners

have not, however, provided any explanation as to how China Trust

National Bank is an agent of PGP.  In contrast, the United States

believes that China Trust National Bank loaned money to PGP and

as such, is not an agent such that communications with it would

be protected by the attorney-client privilege.  See id.

     The burden of proving that the privilege applies lies with

the party asserting the privilege.  See In re Grand Jury

Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992) (citing In re

Grand Jury Subpoenas (Hirsch), 803 F.2d 493, 496 (9th Cir.

1986)); Weil v. Investment/Indicators Research & Management, 647

F.2d 18, 25 (9th Cir. 1981).  Further, because the privilege is

in derogation of the truth-finding process, it must be strictly

construed.  See Weil, 647 F.2d at 24.  The party asserting the

privilege has the burden of proof and must show that

> (1) the asserted holder of the privilege is or
> sought to become a client; (2) the person to whom

the communication was made (a) is a member of the
bar of a court or his subordinate and (b) in
connection with this communication is acting as a
lawyer; (3) the communication relates to a fact of
which the attorney was informed (a) by his client
(b) without the presence of strangers (c) for the
purpose of securing primarily either (i) an
opinion on law or (ii) legal services or (iii)
assistance in some legal proceeding, and not (d)
for the purpose of committing a crime or tort; and
(4) the privilege has been (a) claimed and (b) not
waived by the client.

United States v. KPMG LLP, 237 F. Supp. 2d 35, 40 (D.D.C. 2002);

see also In re Grand Jury Investigation, 974 F.2d at 1071-72 n.2

(citations omitted).

"The party seeking to invoke a privilege has the burden of

establishing non-waiver of the privilege." Nikkal Industries,

Ltd. v. Salton, Inc., 689 F. Supp. 187, 191 (S.D.N.Y. 1988). See

also, United States v. Lewis, 943 F.2d 58 (unpublished), 1991 WL

172666 at *3 (10th Cir. 1991) ("the proponent of the

attorney-client privilege bears the burden of establishing both

that communications at issue are privileged and that the

privilege was not waived "); United States v. Bay State Ambulance

and Hosp. Rental Service, 874 F.2d 20, 27-28 (1st Cir. 1989)

(same). Further, "when an attorney conveys to his client facts

acquired from other persons or sources, those facts are not

privileged." Brinton v. Department of State, 636 F.2d 600, 604

(D.C. Cir. 1980). See also KPMG LLP, 237 F. Supp. 2d at 40.

Accordingly, with respect to the documents covered by the

various entries on the privilege log under the heading

- 18 -

"description" and that indicate that the document is a fax transmittal, letter, note, memorandum, e-mail, invoice, timeline, or other reference that does not also state that such documents pertain to legal advice or legal analysis, the Court should order Petitioners to complete a more detailed privilege log.

With respect to the documents covered by the various entries on the privilege log under the heading "description" and that indicate that the document pertains to legal advice or legal analysis but has been identified as being disclosed to an "agent" of PGP, the Court should order that all documents provided by Petitioners to the individuals or entities identified by Petitioners as agents of PGP and documents which Petitioners received from those individuals or entities must be produced since the attorney-client privilege does not apply with respect to those documents.  In the alternative, the Court should order Petitioners to complete a more detailed privilege log and/or name key addressing the issue as to whether the individuals or entities whom they identified as agents of PGP are agents such that they can be considered Petitioners' clients as well and/or that documents exchanged between Petitioners and its clients were not documents that Petitioners obtained from parties or sources other than PGP.

**2.   The Court Should conduct an in camera inspection of the remaining documents listed on the privilege log to determine whether the attorney-client privilege applies to those documents**

The remaining documents identified on the privilege log at issue, and that are not covered by the discussion in Part C, 1, above, are the documents identified therein under the heading "description" and allegedly pertaining to internal legal analysis performed in order to provide legal advice to the client.

Although Petitioners could satisfy their prima facie showing that the attorney-client privilege applies to the remaining documents by submitting a privilege log (see In re Grand Jury Investigation, 974 F.2d at 1071), they have provided no additional affidavits regarding the confidential nature of the documents and the privilege log as submitted does not sufficiently provide enough information to determine whether the privilege applies to these remaining documents because the documents likely could include business advice as compared to legal advice.

Making statements to an attorney, in and of itself, does not render the communication or the advice privileged.  This is because "[a]ttorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever."  Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962), (citing Lowy v. Commissioner, 262 F.2d 809 (2d

Cir. 1959); Olender v. United States, 210 F.2d 795 (9th Cir.

1954); Pollock v. United States, 202 F.2d 281 (5th Cir.), cert.

denied, 345 U.S. 993 (1953); 8 Wigmore, Evidence § 2296

(McNaughton rev. 1961)).  "When a lawyer acts merely to implement

a business transaction or provides accounting services, the

lawyer is like any other agent of the corporation whose

communications are not privileged."  KPMG LLP, 237 F. Supp. 2d

at 40 (finding no attorney-client relationship between Sidley

Austin and KPMG in their marketing of DGI tax shelters).

It is clear that only those communications related to

"legal, as contrasted with business, advice" are protected.  See

In Re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1037 (2d

Cir. 1984); In re John Doe Corp., 675 F.2d 482, 488 (2d Cir.

1982); TAT Records v. Island Def Jam Music Group, 214 F.R.D. 143,

144 (S.D.N.Y. 2003) (quotation in original); United States v.

ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002);

Henson v. Wyeth, 118 F.R.D. 584, 587 (W.D. Va. 1987); see also,

Altronic Intern., GMBH v. SAI Semispecialists of Am., 232 F.R.D.

160, 163 (E.D.N.Y. 2005).  Therefore, the request for legal

advice must be distinctly clear and void of nuances of business

consultation or instruction, if it is to be privileged.  See

United States v. Millman, 822 F.2d 305, 310 (2d Cir. 1987) (the

party has to show that attorney-client communications were not

related to his role as business advisor); In re Grand Jury

_Subpoena Duces Tecum Dated Sept. 15, 1983_, 731 F.2d at 1037 ("[T]he privilege is triggered only by a client's request for legal, as contrasted with business advice.").

To ensure that the attorney-client privilege remains affixed to the communication and/or advice, the entity has the burden of establishing that the communication was for the purpose of procuring legal advice. _See In re Grand Jury Subpoena_, 599 F.2d at 510. To evaluate such a claim of privilege, "a court may have to parse not only the words but their intent in order to glean the authentic purpose of the communication." _See Luqosh v. Congel_, 2006 WL 931687 (2006 N.D.N.Y) (footnote omitted). As discussed in _Luqosh_:

> Because of the duality of the advice, a court must assume the very complicated task of inquiring into the subject matter of the communication in order to determine its true characteristic. _Elliot Assocs., L.P. v. Republic of Peru_, 176 F.R.D. 93, 97 (S.D.N.Y.1997) (_citing_ _Colton v. United States_, 306 F.2d at 636) (opining that the inquiry should be of a "sufficient abstract level so as to not reveal the substance of the advice"). When the ultimate decision is based upon both legal and business considerations, the business and management aspect of the discussion will not be as fortunate in receiving protection by the privilege. _TVT Records v. Island Def Jam Music Group_, 214 F.R.D. 143, 144 (S.D.N.Y.2003) (_citing_ _In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983_, 731 F.2d at 1037 (protects legal advice not business)); _Fine v. Facet Aerospace Prod. Co._, 133 F.R.D. 439, 444 (S.D.N.Y.1990); _Hardy v. New York News, Inc._, 114 F.R.D. 633, 643-44 (S.D.N.Y.1987); _United States v. Schenectady Sav. Bank_, 525 F.Supp. 647, 650 (N.D.N.Y. Oct. 28, 1981) (_citing_ _Colton v. United States_, 306 F.2d at 638, for the proposition that tax advice is not protected).

Lugosh v. Congel, 2006 WL 931687 (N.D.N.Y. 2006) (footnote omitted).

Here, it is not clear from the privilege log itself whether the withheld documents pertain to business advice or legal advice.  Petitioners were hired by their clients ("clients") for purposes of executing a business transaction.  See Stacks Dec., ¶ 9.  The clients indirectly owned the Hilton Waikoloa Village, a resort located in Hawaii ("resort"), through PGP, the taxpayer under examination.  See id.  Starn O'Toole was hired by its clients to execute the sale of the resort.  See id.  Through a series of transactions, the clients attempted to avoid paying federal income taxes on $155,132,000 of income they received for the sale of the resort.  See id.  The three transactions were as follows:

Step 1:   On or about April 22, 2002, the clients sold their partnership interest in Global Resort Partners, the entity that directly owned the assets of the resort and was 86.66% owned by PGP, to Hilton Recreation, Inc. ("Hilton"), an entity related to Hilton Hotels Corporation.  Starn O'Toole's clients received $155,132,000 in sales proceeds from the sale of the resort to Hilton.

Step 2:   On or about May 16, 2002, the clients attempted to shelter the $155,132,000 from federal income

- 23 -

taxation by purporting to sell their partnership

interests in PGP to an intermediary entity named

Browning Road Trading Two LLC ("Browning Road"),

an entity that appears to have been formed to

engage in tax shelter transactions.

Step 3:   On or about May 22, 2002, Browning Road was

purportedly sold to another entity, OR

Acquisitions II, Inc.

See id.

Starn O'Toole drafted and participated in the execution of

the sales documents used to implement the transaction described

in Step 1, above.  See id., ¶ 10.  Thus, it is clear that

Petitioners had more involvement in this matter than simply

giving legal advice as they implemented the transaction.  "When a

lawyer acts merely to implement a business transaction or

provides accounting services, the lawyer is like any other agent

of the corporation whose communications are not privileged."

KPMG LLP, 237 F. Supp. 2d at 40.  By engaging in the transactions

described above, the clients attempted to avoid paying federal

income taxes on the $155,132,000 sales proceeds they received in

2002.  See id., ¶ 11.  The $155,132,000 sales proceeds were not

properly reported on any federal income tax return for the 2002

tax year.  See id.  Because the sales proceeds appear not to have

been properly reported on any federal income tax return, the IRS

needs information regarding the flow of money from the sale; specifically the IRS needs any wire transfers, bank statements, loan documents and other documents describing the sale.  See id., ¶ 12.

The remaining documents identified in the privilege log that are not subject to arguments set forth in Section C, I, above, pertain to the transaction described in Step 1, above, and thus there is a clear issue as to whether Petitioners were purely providing legal advice.  In addition, the IRS also has knowledge, based on other documents in its possession, that Petitioners frequently communicated information regarding the transactions with other law firms and individuals who are not PGP.  See id., ¶ 14.  This raises an issue as to whether some of the documents contain information that Petitioners obtained from other persons or sources and conveyed that information to their client.

Even if the Court were to find that Petitioners have met their prima facie burden with respect to the privilege log and assertion of the attorney-client privilege with respect to those documents, the Court should conduct an in camera review of the documents listed therein to determine whether the attorney-client privilege actually applies to them.  The United States Court of Appeals for the Ninth Circuit has held that in camera review of documents is available when the party opposing the privilege "show[s] a factual basis sufficient to support a reasonable, good

faith belief that _in camera_ inspection may reveal evidence that
information in the materials is not privileged." _In re Grand
Jury Investigation_, 974 F.2d at 1075. This is a "minimal
threshold" and once such a showing is made, the decision whether
to conduct the review lies within the discretion of the judge,
who should be guided by certain factors enumerated in _United
States v. Zolin_, 491 U.S. 554, 572 (1989). _See In re Grand Jury
Investigation_, 974 F.2d at 1072-75. Once the "minimal threshold"
has been met, "courts should make the decision to review in light
of the amount of material they have been asked to review, the
relevance of the alleged privilege material to the case, and the
likelihood that _in camera_ review will reveal evidence to
establish [that the attorney-client privilege is inapplicable]."
_Zolin_, 491 U.S. at 572.

Here, the United States has easily met its "minimal
threshold" in order for the Court to conduct an _in camera_ review
of the documents. The United States has shown that Petitioners
were retained to provide assistance with a business transaction
and that Petitioners had communications with numerous individuals
and entities other than their client in performing their services
for their client. _See_ Stacks Dec., ¶¶ 9- 14. These facts
support the United States' reasonable good faith belief that at
least some, if not most, of the documents which Petitioners claim
are privileged are not covered by the attorney-client privilege.

- 26 -

In addition, the United States' reasonable good faith belief is further supported by the fact that Petitioners are withholding documents which clearly were provided to and/or received from parties other PGP to which the attorney-client privilege normally would not apply.

The Court should then also exercise its discretion to conduct an in camera review of the privilege log and documents. First, the total number of responsive documents has been narrowed from over 8,800 documents to roughly 2,700 documents listed in the privilege log and could potentially be further narrowed if Petitioners provided more explanation or detail in their privilege log and name key as discussed in Section C, I, above. Second, the documents are extremely relevant to the IRS's examination into the federal tax liabilities of PGP for the tax period ending December 31, 2002, because they relate to a sale of one of PGP's partnership interests in a business.  In fact, that is the crux of the need for the summonses and material requested thereunder.  Finally, the United States has shown that there is a strong likelihood that at least some of the documents are not covered by the attorney-client privilege because they are either in the nature of business advice, contain information learned and/or conveyed from third parties other than PGP, and they were disclosed to parties other than PGP thus waiving any potential attorney-client protection.

Accordingly, with respect to these remaining documents, the Court should review these documents in camera to determine whether the attorney-client privilege applies to any such documents or whether the documents pertain to business advice or are either documents obtained from a source other than PGP or are documents which relay facts and information to PGP from persons or sources other than PGP to which the attorney-client privilege does not apply.

### CONCLUSION

For the reasons set forth above, the United States requests that the Court deny Petitioners' Petition.


Respectfully submitted this 21st day of March, 2007.

<div style="margin-left: 40%;">

EDWARD H. KUBO, JR., Esq.
United States Attorney
District of Hawaii

/s/ Jeremy N. Hendon
JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice

</div>